IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| **MYRON SIMMONS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 18-1429 |
| ) | |
| **BLOOMINGTON POLICE** ) | |
| **DEPARTMENT, ANNA LEGNER,** ) | |
| **EDWARD SHUMAKER,** ) | |
| **and THE CITY OF BLOOMINGTON** ) | |
| ) | |
| **Defendant.** ) | |

### ORDER AND OPINION

This matter is now before the Court on Defendants Bloomington Police Department, Anna Legner, Edward Shumaker, and the City of Bloomington's Motion for Summary Judgment. Plaintiff filed a response and Defendants filed a reply. Plaintiff also filed a sur-reply, which Defendants moved to strike because Plaintiff did not first get the Court's permission to file such a brief. Plaintiff is proceeding without an attorney, so in deference to the *pro se* Plaintiff, the Court considered his arguments in the sur-reply and thus, denies Defendants' Motion to Strike. (Doc. 44). For the reasons set forth below, Defendants' Motion for Summary Judgment (Doc. 35) is GRANTED.

### JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 (a)(4), as the claims arise under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

### FACTUAL BACKGROUND

On June 23, 2017, Officer Anna Legner was on patrol in Bloomington, Illinois when she

observed a Blue Ford Contour with three passengers drive past her and quickly pull into a nearby driveway. (Doc. 35-1 at 3). She ran the license plate and found that the vehicle was registered to Plaintiff and that Plaintiff did not have a valid driver's license. *Id.* Officer Legner also testified that she was aware that Plaintiff had an active warrant. (Doc. 35-3 at 2). Therefore, she waited another officer, Officer Quinn[1] to arrive so they could approach the vehicle together. *Id.* When the officers began walking towards the vehicle, all passengers quickly exited the car, and Plaintiff was near the driver's seat. *Id.* at 3.

Officer Legner confirmed Plaintiff's identity and asked him what they were doing. Plaintiff responded that they were waiting on a ride to work. (Doc. 35-1 at 3). Officer Legner then asked him where he had driven from and Plaintiff responded, "my house." *Id.* She further asked Plaintiff if he had a driver's license, and according to Officer Legner, Plaintiff responded that he did not have a driver's license. *Id.* After questioning, Officer Legner issued Plaintiff a citation for No Valid Driver's license and released his vehicle to Joe's Towing. *Id.* Officers did not take any further action including a search or an arrest. (Doc. 35-4 at 51). According to Plaintiff, when his Uber arrived, he got into the Uber and left the scene without any delay from officers. *Id.* at 64. Plaintiff agrees he was able to retrieve his towed vehicle about a month and a half later and immediately sold the vehicle. *Id.* at 51.

Plaintiff, however, asserts that the officers were wrong to cite him or tow his vehicle because he was not, in fact, driving his car that morning. *Id.* at 41. He asserts that he was employed as a mover on the day in question and that his nephew drove him to meet his

---

[1] Plaintiff asserts that the second officer who came with Officer Legner is Sergeant Shumaker and he asserts that Sergeant Shumaker had previously towed his ex-wife's car. (Doc. 35-4 at 59). However, in both Sergeant Shumaker and Officer Legner's affidavits, he was never on the scene and he did not arrest or personally know Plaintiff for any reason. (Doc. 35-2 at 3). The Court, however, need not resolve this factual disagreement because even crediting Plaintiff's version of the story, Defendants prevail.

coworkers at the Pilot Truck Stop. (Docs. 41; 35-1 at 32). Plaintiff asserts that his nephew then drove all four of them to his coworker James Julian Castillo's house located nearby to get the toolbox for their next job task. *Id.* at 31. Plaintiff asserts that his nephew left in a different car after they arrived at Castillo's house and the three men remained with Plaintiff's vehicle in Castillo's driveway. *Id.* at 42. After his nephew left, Plaintiff asserts that he switched to the driver's seat. *Id.* at 45. According to Plaintiff, they sat in the vehicle in Castillo's driveway and planned to take an Uber to the work site. *Id.* Plaintiff asserts, without citing any evidence, that the only reason that Officer Legner followed his vehicle was because she saw three people of color in the vehicle. He maintains that he committed no crime and that he was racially profiled.

On November 29, 2018, Plaintiff commenced this action against Bloomington Police Department; Anna Legner; Edward Shumaker; and the City of Bloomington. (Doc. 1). On August 31, 2020, Defendants filed the instant Motion for Summary Judgment. This matter is now fully briefed, and this Order follows. (Doc. 35).

## STANDARD OF REVIEW

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate, through portions of the record or affidavits, the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec.*

3

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex*, 477 U.S. at 324. Nevertheless, this Court considers all facts and draw all inferences in the light most favorable to the non-moving party. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). The Court will deny summary judgment if a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248; *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016).

## DISCUSSION

In order to state a claim for relief under § 1983, the plaintiff must allege a deprivation of a right secured by the Constitution or laws of the United States by a person acting under color of state law. *Kramer v. Village of North Fond du Lac,* 384 F.3d 856, 861 (7th Cir. 2004) (citing *Gomez v. Toledo,* 446 U.S. 635, 640 (1980)). Plaintiff asserts that Defendants violated his Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures without probable cause, discrimination based on race.

Defendants argue that they did not violate Plaintiff's constitutional rights. In the alternative, they argue they are otherwise entitled to qualified immunity on Plaintiff's Fourth Amendment and Fourteenth Amendment claims because even if they violated any of Plaintiff's rights, those rights were not clearly established, and their mistake was reasonable. The Court will first address whether Defendants violated Plaintiff's constitutional rights.

**I.   Defendants did not violate Plaintiff's Fourth Amendment Rights.**

The Plaintiff asserts that the officers violated his Fourth Amendment rights by unreasonably questioning him and seizing his vehicle without probable cause. Plaintiff argues that he did not, in fact, drive the car that morning and thus, the arrest and seizure were

constitutional violations. Defendants argue that, in determining probable cause, the court must consider the events leading up to the arrest and determine whether those facts, from the standpoint of an objectively reasonable police officer, add up to probable cause. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Probable cause is not a high bar, and it only requires a "probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243-244 (1983); *Kaley v. U.S.*, 571 U.S. 320, 338 (2014).

Moreover, the Supreme Court has held that officers are generally justified in conducting a traffic stop even when the vehicle did not commit any traffic violations, but the officer ran a license plate check and found the owner's license was suspended. *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020); *see also People ex rel. Nerheim v. 2005 Black Chevrolet Corvette*, 40 N.E. 3d 160, 167 (Ill. App. Ct. 2015); *People v. Close,* 939 N.E. 2d 463, 471 (Ill. 2010). Defendants argue that like in *Glover*, Officer Legner ran the vehicle plate and learned that the owner of the vehicle did not have a valid driver's license. Therefore, even though Plaintiff did not violate any traffic code, there was probable cause for Officer Legner to approach the vehicle and investigate. Here, the police approached Plaintiff and he voluntarily engaged with officers to tell them that he came from "his house." Plaintiff admits he was near the driver's seat of the car and the officers just observed the car driving down the road. Based on the totality of the above facts, a reasonable officer would conclude that there was a "probability or substantial chance" of driving without a valid license and issue a citation. *Gates*, 462 U.S. at 243-244.

The officers were further justified in towing the vehicle. Pursuant to Illinois state law 625 ILCS 5/11-208.7(b) and a City of Bloomington Ordinance, Article XXII, §29-2208, (Ch. 29, Sec. 194B), driving a vehicle without a valid license subjects the vehicle to towing and impoundment. In Illinois, "[i]t is well settled that the only elements necessary to prove the

offense of driving while license suspended or revoked are '(1) the act of driving a motor vehicle on the highways of this State, and (2) the fact of the revocation of the driver's license or privilege.'" *People v. Jackson*, 983 N.E.2d 1027, 1033 (Ill. 2013) (quoting *People v. Close*, 939 N.E.2d 463, 469 (Ill. 2010)). Even if Plaintiff's specious claims are true about his nephew driving him there and immediately leaving in a different vehicle, the officers had reason to believe Plaintiff was driving his vehicle with a suspended license. Therefore, the officers towing Plaintiff's vehicle does not violate his Fourth Amendment rights.

## II. Defendants did not violate Plaintiff's Fourteenth Amendment Rights.

Plaintiff asserts that Defendants violated his Fourteenth Amendment rights because the officers approached him and detained his car solely based on racial discrimination. In order for Plaintiff to successfully support an Equal Protection claim, he must prove that he had been "intentionally treated differently from other similarly situated and that there is no rational basis for the difference in treatment." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601(2008). Defendants argue that Plaintiff cannot produce any facts that suggest that the officers discriminated against him, and his bald allegations and conclusions are baseless.

Plaintiff provides that, when he reviewed Officer Legner's police report, he noticed that Officer Legner described that "A blue Ford . . . with three black males drove past me." Based on this statement, Plaintiff asserts that Officer Legner ran his license plate solely because there were three black people in the vehicle. However, this does not prove Officer Legner's intentional or purposeful discrimination against Plaintiff. Plaintiff does not provide any evidence in the record to support his speculation that Officer Legner ran his license plate for discriminatory reasons. Instead, Officer Legner explained in her police report that she noticed the vehicle quickly turned into a driveway after driving past her patrol car. It was the vehicle's sudden movement that prompted Officer Legner to check the vehicle's plate. Officer Legner

also explained in the police report that she made the decision to call her co-worker and approach Plaintiff's vehicle because she found that the registered owner did not have a valid driver license and she believed he had an active warrant. Plaintiff does not provide any evidence of racial animus other than a neutral description of the occupants of the vehicle. Instead, Officer Legner adequately provided a non-racially motivated reason for investigating Plaintiff and his vehicle.

Plaintiff further asserts that the seizure of his vehicle deprived him of property without due process of law, led him to a forcible poverty, and therefore violated his Fourteenth Amendment rights. Illinois Vehicle Code authorizes the county or municipality to provide by ordinance for impounding vehicles and imposing fees for driving without valid license. 625 ILCS 5/11-208.7. As discussed above, the City of Bloomington Ordinance further authorizes police officer to impound the vehicle if the police officer has probable cause to believe the driver has a suspended or revoked license. Therefore, Defendants did not violate Plaintiff's Fourteenth Amendment rights by impounding his vehicle.

### III. Defendants are otherwise entitled to qualified immunity because they did not violate any clearly established rights.

While Defendants did not violate Plaintiff's constitutional rights, they would otherwise be protected by qualified immunity even if Plaintiff is correct in asserting that he did not drive his vehicle that morning. Qualified immunity shields a police officer from § 1983 liability if a "reasonable officer could have believed that their actions were lawful, in light of clearly established law and the information the arresting officer possessed." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The qualified immunity inquiry is a two-step analysis addressing (1) whether a constitutional violation has occurred and (2) whether the right was "clearly established" at the

time of the violation. *Pearson v. Callahan*, 129 S.Ct. 808, 815–16 (2009). Under the second prong of qualified immunity, plaintiffs bear the burden of proving that the constitutional right at issue was clearly established at the time of the defendant's actions. *Purtell v. Mason*, 527 F.3d 615, 621 (7th Cir. 2008). Plaintiffs may meet this burden by providing the court with "a clearly analogous case establishing a right to be free from the specific conduct at issue" or by showing that "the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (quoting *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001)). As explained above, the totality of the evidence provided a reasonable basis for Officer Legner to conclude that Plaintiff had driven without a license and impound his car as permitted by Illinois law. There was nothing egregious about the officers' conduct, and Plaintiff has not provided any case law to suggest the officers violated any clearly established rights. Thus, Defendants are otherwise entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [35] is GRANTED. Defendants' Motion to Strike [44] is DENIED because the Court considered Plaintiff's sur-reply in drafting this opinion.

ENTERED this, 14th day of January, 2021.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge